## LONG v. COMMONWEALTH.

Court of Appeals of Kentucky.

March 12, 1954.

George T. Ross, Andrew J. Ross, Thomas D. Shumate and Shumate & Shumate, Richmond, for appellant.

J. D. Buckman, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Heidel Long was indicted by the grand jury of Madison County for the offense of willful murder. KRS 435.010. The jury found Long guilty of manslaughter and fixed a sentence of six years' confinement in the state penitentiary.

He appeals from the judgment entered, urging the following grounds for reversal: (1) the court erred in failing to direct the jury to find defendant not guilty; (2) the verdict is against the weight of the evidence and is the result of passion and prejudice on the part of the jury; (3) the argument of the Commonwealth's attorney was improper and highly prejudicial to the substantial rights of defendant.

We shall consider grounds (1) and (2) together, as counsel for appellant have done in their brief. There is very little variance in the Commonwealth's proof and that of the defendant as to what transpired in this case. The killing took place on First Street in Richmond, Kentucky, at approximately 8:00 p. m. on July 19, 1953. On the particular night in question defendant, then living at Lexington but a former resident of Richmond, was walking down First Street in the latter city. From time to time he stopped to renew acquaintance with old friends. He had paused near Taylor's Poolroom to converse with Charlie Baker, when the deceased, Fred Masters, who was talking with some friends across the street, saw defendant and said in effect, "There goes Long. I've been wanting to see him for several days." Masters then hurried across the street, approached defendant, seized his arm and spun him around. Masters immediately accused defendant of telling a God damn lie on him, and called defendant a son-of-a-bitch.

At this point the evidence becomes somewhat conflicting. Long and Charlie Baker, who testified in defendant's behalf, stated the deceased told Long, "I'm going to cut your God damn throat." Be that as it may, it is undisputed that Masters seized Long by the shoulders and the two men began to scuffle. They moved toward the edge of the sidewalk near the street, whereupon Long pulled his right arm away, drew a pistol from his right pants' pocket and fired at Masters three times. One bullet entered the chest of the deceased just below the left nipple and passed through his body. He

died shortly thereafter as a result of the wounds inflicted.

Defendant testified he pulled his gun only after Masters threatened to cut his throat and reached for his right pants' pocket. Only one other witness actually testified to this particular motion. On the other hand, one witness for the Commonwealth indicated that at the time Long fired the first shot, Masters had both hands on Long's shoulders. One witness testified that Long fired at least once after Masters had fallen to the ground. No one saw Masters draw a knife from his pocket. Bill Joe Mason, chief of police for the city of Richmond, stated a closed pocket knife had been discovered later in the right pocket of the deceased's trousers.

An examination of the evidence just recited can leave no doubt that the case was properly submitted to the jury. Nor does the penalty imposed upon the defendant, in our opinion, indicate passion and prejudice on the part of the jury. If the evidence of the Commonwealth's witnesses was accepted as true, and we must assume that it was, then the jury had justifiable grounds upon which to base a finding that defendant did not reasonably believe his life was in danger at the time he shot the deceased. Having reached such a possible conclusion, the jury sentenced defendant to only six years' imprisonment, when they could have imposed a far greater sentence. We conclude grounds (1) and (2) are untenable.

Defendant's final contention is equally without merit: He points to the following remark by the Commonwealth's attorney: "The only way and only time so far as this case is concerned one man has the right to take the life of another is when he himself is in the possible danger of losing his own life or suffering great bodily harm." We find nothing prejudicial in this remark, and this is especially true when we examine the trial court's instructions and the entire closing statement of counsel for the Commonwealth. The trial judge fully and properly presented defendant's theory of self-defense to the jury. More than that, the Commonwealth's attorney, in other parts of his statement, referred to the issue of self-defense and made it abundantly clear that defendant was entitled to shoot deceased if he, defendant, reasonably believed that his life was in danger. The argument was clearly within the evidence.

For the reasons hereinbefore stated, the judgment is affirmed.